# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD TECZA, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-242 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

  Plaintiff, Edward Tecza, Jr., commenced the instant action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff filed an application for DIB on November 9, 2005, alleging disability since January 1, 2002 due to alcoholic hepatitis and depressive disorder (Administrative Record, hereinafter "AR", 56-58; 71). His application was denied and he requested a hearing before an administrative law judge ("ALJ") (AR 30-33; 40). Following a hearing held on October 3, 2007, the ALJ found that Plaintiff was not entitled to a period of disability or disability insurance under the Act (AR 16-26; 377-397). Plaintiff's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, I will deny the Plaintiff's motion and grant the Defendant's motion.

## I. BACKGROUND

  Plaintiff was born on August 31, 1956 and was forty-nine years old as of the date last insured (AR 28). He received his General Education Development ("GED") certificate and attended college part-time for three years (AR 128; 381).

  Plaintiff was admitted to the hospital from November 4, 2005 until November 21, 2005 with a chief complaint of abdominal pain (AR 118). He reported that he drank a half-gallon of

1

vodka every two to three days and his family reported that he had been an alcoholic for years (AR 118; 124). He complained of urinary difficulties, swelling and abdominal pain (AR 124). Diagnostic studies revealed findings consistent with cirrhosis of the liver (AR 146). Dr. Stevens diagnosed Plaintiff with acute alcoholic hepatitis, hepatic encephalopathy, portal hypertension, spontaneous bacterial peritonitis, acute renal failure, hyponatremia, hypokalemia and depression (AR 111).

During his hospitalization, Plaintiff was psychologically evaluated by Yogesh Maru, M.D. on November 7, 2005 (AR 127-129). Dr. Maru observed that Plaintiff was sad, depressed, had a poor energy level and poor motivation (AR 127). Plaintiff reported that he had several good jobs in the past and that he had worked for an oil company for approximately 12 years as an accountant (AR 128). He indicated that he had been laid off from work for the past four years and was unable to find work (AR 127). He continued to use alcohol while employed (AR 128). He lived with a roommate for the past 30 years and had no children (AR 127). Plaintiff reported a previous psychiatric admission at the age of 20 or 21 related to his alcohol usage, but was not currently on any antidepressant or psychotropic medication (AR 127). Plaintiff stated that he began drinking in his teens, and drank approximately 15 cans of beer in one sitting, starting all over again the next day (AR 128).

Physically, Dr. Maru noted that Plaintiff's past medical history was significant for alcohol induced hepatitis and he was deeply jaundiced (AR 127). On mental status examination, Plaintiff exhibited poor eye contact, his affect was stable, mildly blunted, his speech was clear with normal rate and volume and his thought process was goal directed (AR 128). His thought processes were slow with poor production of speech and his concentration and past memory were "patchy" in that he was unable to give dates in a temporally correct way (AR 128). His concentration was average, his immediate memory was poor, his insight and judgment were fair and his fund of knowledge was average (AR 128). Dr. Maru diagnosed Plaintiff with depressive disorder not otherwise specified and alcohol dependence and assigned him a Global Assessment of Functioning ("GAF") score of 30 (AR 129).[1] He recommended that Plaintiff begin taking

---

[1] The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. It represents "the clinician's judgment of the

2

Celexa, and be referred to a dual-diagnosis facility for psychiatric treatment and alcohol treatment (AR 129).

Dr. Stevens completed a Department of Public Welfare Employability Assessment Form on November 16, 2005, and opined that Plaintiff was temporarily disabled from November 4, 2005 until November 3, 2006 due to alcoholic hepatitis and depression (AR 109-110).

Plaintiff was treated by nurses through the Visiting Nurses Association ("VNA") of Venango County following his discharge from the hospital (AR 195-231). When initially assessed on November 22, 2005, it was noted that his symptoms were poorly controlled but that a partial to full recovery was expected and a marked improvement in his functional status was expected (AR 219). Plaintiff was able to understand complex or detailed instructions and extended or abstract conversation, his speech pattern and tone was normal and he had no impairment in his ability to express complex ideas, feelings and needs, clearly and completely (AR 220). He reported that he was depressed (sad and tearful) and also had some anxiety (AR 223).

On November 25, 2005 and December 5, 2005, Plaintiff was fully oriented and exhibited no new or worsening symptoms (AR 206-207; 214-215).

Plaintiff was seen by Dr. Stevens for follow-up on December 7, 2005 (AR 259). Dr. Stevens reported that Plaintiff was doing well at home, had not started drinking again and had no new problems (AR 259). Plaintiff was in no acute distress and was fully oriented (AR 259). Dr. Stevens noted that Plaintiff's alcoholic hepatitis was resolving (AR 259).

Records from the VNA indicate that on December 13, 2005 Plaintiff reported that he was depressed and anxious, but the nurse found that he was alert, oriented, able to focus and shift attention and recall task directions independently (AR 200). He was able perform most activities of daily living, although he needed assistance in preparing light meals and carrying large loads of

---

individual's overall level of functioning." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 32 (4th ed. 2000). Scores between 21 and 30 indicate that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *Id.* at 34.

3

laundry (AR 201).

Plaintiff underwent a clinical psychological disability evaluation performed by Robert Craig, Ph.D. on March 3, 2006 (AR 232-236). Dr. Craig diagnosed Plaintiff with alcohol dependence, in partial remission and depressive disorder NOS and assigned him a GAF score of 45 (AR 235).[2] Dr. Craig concluded that Plaintiff's mental impairments did not affect his ability to understand, remember and carry out instructions and that any moderate mental limitations that existed would improve over time (AR 238-239). He also concluded that his social withdrawal was largely caused by years of alcohol abuse (AR 238-239).

On April 6, 2006, Roger Glover, Ph.D., a state agency reviewing psychologist, completed a Mental Residual Functional Capacity Assessment form, and found that Plaintiff was not significantly limited in a number of areas, but was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work in coordination with others without being distracted, complete a normal work week without exacerbation of his psychological symptoms, maintain socially appropriate behavior and respond appropriately to changes in the work setting (AR 240-241). On a Psychiatric Review Technique form completed the same date, Dr. Glover concluded that Plaintiff had a moderate restriction of activities of daily living; mild difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and had no repeated episodes of decompensation of extended duration (AR 253).

Dr. Glover found that the medical evidence established Plaintiff suffered from alcohol dependence and a depressive disorder, but that his basic memory processes were intact (AR 242). Dr. Glover concluded that the Plaintiff was able to work at a consistent pace, make simple decisions, maintain regular attendance, be punctual and complete a normal workweek without exacerbation of psychological symptoms (AR 242). He noted that his daily activities and social skills were functional from a psychiatric standpoint and that he was self-sufficient (AR 242). Dr.

---

[2]Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*.

4

Glover indicated that Plaintiff could sustain an ordinary routine and adapt to routine changes without special supervision, was capable of understanding and remembering instructions, concentrating, interacting with others and adapting to changes in the workplace (AR 242). Dr. Glover concluded that, as of Plaintiff's last date insured, December 31, 2005, he could "meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment" (AR 242).

Plaintiff returned to Dr. Stevens on April 19, 2006 for follow-up on his alcoholic hepatitis (AR 257). Dr. Stevens reported that he was doing well and had not had any alcohol since November 2005 (AR 257). Plaintiff reported that he stopped taking the Celexa due to side effects (AR 257). He was in no acute distress, was alert and oriented and physical examination revealed only trace edema bilaterally (AR 257). Dr. Stevens reported that his alcoholic hepatitis had resolved as of that date (AR 257).

On June 28, 2006, Dr. Glover completed a second Mental Residual Functional Capacity Assessment form and a Psychiatric Review Technique form (AR 260-275). Dr. Glover's opinion remained unchanged from his April 2006 assessment (AR 273-275). He concluded that as of December 31, 2005, Plaintiff was capable of meeting the mental demands of competitive work on a sustained basis despite the limitations resulting from his mental impairment (AR 275).

On June 28, 2006, Lisa Tissue, a state agency reviewing consultant, reviewed the medical evidence of record and completed a Physical Residual Functional Capacity Assessment form (AR 276-281). Ms. Tissue concluded that as of December 31, 2005, Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, was unlimited in his push/pull ability and had no other limitations (AR 276-279). Ms. Tissue found that Plaintiff's alleged significant restrictions in standing, walking, lifting, carrying, performing at a consistent pace and completing daily activities, were outweighed by the other evidence in the case (AR 281). She noted that Plaintiff received no treatment for his physical impairment prior to November 2005 and that at his most recent examination on April 19, 2006 his alcoholic hepatitis had resolved (AR 281).

On February 2, 2007, Plaintiff was psychologically evaluated by William Fernan, Ph.D. in order to determine his "current level" of functioning (AR 292-299). Dr. Fernan diagnosed

Plaintiff with major depressive disorder and alcohol dependence (in remission) and assigned him a GAF score of 45 (AR 296). Dr. Fernan found the Plaintiff was only moderately limited in his ability to respond appropriately to changes in a routine work setting, but was markedly limited in his ability to understand, remember and carry out detailed instructions, interact appropriately with the public, supervisors and coworkers, and respond appropriately to work pressures in a usual work setting (AR 297).

When Plaintiff returned to Dr. Fernan on September 14, 2007, Dr. Fernan reported that Plaintiff had extreme limitations with respect to interacting appropriately with the public, supervisors and coworkers and marked limitations in responding appropriately to changes in a routine work setting (AR 327).

Plaintiff and Robert Edwards, a vocational expert, testified at the hearing held by the ALJ on October 3, 2007 (AR 377-397). Plaintiff testified that he had not worked since January 1, 2002 when he was a purchasing clerk (AR 381-382). Plaintiff stated that his job as a purchasing clerk consisted of order entry for purchasing, calling vendors to check on orders, answering the phone and general clerical-type filing (AR 382). Plaintiff indicated that prior to November 2005, he drank alcohol every day, mostly beer and vodka (AR 385-386). He further testified that when he drank, he kept himself isolated, did not socialize, watched television and had his roommate take care of his personal errands (AR 386-387). Plaintiff claimed that he had not, however, consumed any alcohol following his hospitalization in November 2005 until April 2007 (AR 383-384).

Plaintiff testified that for one year following his release from the hospital in 2005, he was unable to get off the couch due to stomach pain and depression (AR 391). He claimed he continued to have stomach pains and could not stand or sit for long periods of time (AR 393). Plaintiff indicated that he was extremely depressed, agitated and moody (AR 394). He was unable to sleep through the night or engage in any physical activity AR 394). Plaintiff testified that he spent three-quarters of his day laying down due to pain (AR 395).

The vocational expert testified that Plaintiff's past relevant work as a purchasing clerk and telephone solicitor was sedentary and semi-skilled (AR 396).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was

6

not entitled to a period of disability or disability insurance within the meaning of the Social Security Act (AR 16-26). Plaintiff's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 5-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c); *Matullo v. Bowen*, 926 F.2d 240, 244 (3rd Cir. 1990) (claimant is required to establish that he became disabled prior to the expiration of his insured status); *see also* 20 C.F.R. § 404.131. Plaintiff's insured status expired on December 31, 2005; therefore he must show he was disabled on or prior to that date for purposes of entitlement to DIB.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

7

> In the first two steps, the claimant must establish (1) that he is not
> engaged in "substantial gainful activity" and (2) that he suffers
> from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S.
> 137, 140-41 (1987). If the claimant shows a severe medical
> impairment, the [Commissioner] determines (3) whether the
> impairment is equivalent to an impairment listed by the
> [Commissioner] as creating a presumption of disability. *Bowen*,
> 482 U.S. at 141. If it is not, the claimant bears the burden of
> showing (4) that the impairment prevents him from performing the
> work that he has performed in the past. *Id.* If the claimant satisfies
> this burden, the [Commissioner] must grant the claimant benefits
> unless the [Commissioner] can demonstrate (5) that there are jobs
> in the national economy that the claimant can perform. *Ferguson
> v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

In the case of an individual suffering from alcoholism or drug addiction, the Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J). This provision effectively bars the award of disability benefits based on alcoholism or drug addiction. *Torres v. Chater*, 125 F.3d 166, 169 (3rd Cir. 1997). The ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether any of the claimant's remaining limitations would be disabling. *See* 20 C.F.R. § 416.935(b)(2); *Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 699 (W.D.Pa. 2002). If the ALJ concludes that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i). If, however, the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and ... [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(ii).

In summary, the Commissioner's disability determination must proceed in four discrete stages:

> First, [the Commissioner] must consider all of the claimant's
> limitations and then use the usual five-step sequential analysis to
> decide whether the claimant is disabled. Second, the

8

> Commissioner must determine whether there is medical evidence
> of an Alcohol Use Disorder, as defined in the *DSM*. When such
> medical evidence exists, the Commissioner must identify which of
> the claimant's limitations would remain if he stopped using
> alcohol. Finally, the Commissioner must return to the five-step
> analysis to evaluate whether the claimant's remaining limitations
> would be disabling.

*Warren v. Barnhart*, 2005 WL 1491012 at *10 (E.D.Pa. 2005).

Here, the ALJ determined that, during the relevant time period, January 1, 2002 (Plaintiff's alleged onset date), through December 31, 2005 (date last insured), Plaintiff's depression/anxiety and alcoholic hepatitis were severe impairments (AR 19). At step three, the ALJ found that, while abusing alcohol, Plaintiff's impairments met the requirements for a listed impairment as set forth in sections 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders) of 20 C.F.R. pt. 404, subpt. P, app. 1 (AR 20). The ALJ next found that Plaintiff would continue to have the severe impairments even if he stopped abusing alcohol, but that he did not meet a listing (AR 21-22). The ALJ found that absent such alcohol abuse, Plaintiff retained the residual functional capacity to perform the full range of sedentary work and would be able to perform his past relevant work as a purchasing clerk and telemarketer (AR 22; 25). Because the ALJ found Plaintiff would not be disabled if he stopped abusing alcohol, he concluded that his substance abuse was a contributing factor material to the determination of disability, and therefore, he was not entitled to benefits (AR 25). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

The Plaintiff makes the following argument in his Brief:

> The ALJ fails to adjudicate whether Tecza was disabled at
> any time on and after November 4, 2005. The ALJ erroneously,
> apparently, concludes that, in order for an individual to be
> disabled, the entire twelve month durational period must precede
> the Date Last Insured. This is error. (See 20 C.F.R. Section
> 404.321(a); See SSR 83-20; DI 25501.050). It is only necessary
> that onset occur prior to DLI, and that clearly happened in this
> case.
> The ALJ failed to analyze this issue whatsoever, and
> therefore, remand must occur. Moreover, a review of the
> uncontradicted evidence illustrates an inability to perform work
> activity on and after November 4, 2005, based upon his exertional
> and non-exertional problems, and, a worsening of Tecza's
> condition subsequent to said date.

*See* Plaintiff's Brief p. 13. In his decision, the ALJ appropriately rejected this contention stating:

9

> It is important for the claimant to understand that in this case, his disability insured status expired on December 31, 2005. While his condition may have significantly deteriorated subsequent to that date and <u>may</u> in fact be disabling at this time, such a finding is immaterial to the decision of the undersigned Administrative Law Judge if the claimant was not disabled as of December 21, 2005.

(AR 19) (emphasis in original). Pursuant to the regulations, Plaintiff is required to establish that he was disabled on or before the expiration of his insured status, namely, December 31, 2005. *See* 20 C.F.R. § 404.131; *Matullo*, 926 F.2d at 244; *Kane v. Heckler,* 776 F.2d 1130, 1131 n.1 (3rd Cir. 1985) ("To receive disability insurance benefits pursuant to Title II of the Social Security Act, a claimant must show that he was insured under the program at the time of onset of his disability."); *Kelley v. Barnhart*, 138 Fed. Appx. 505, 507 (3rd Cir. 2005) (holding that plaintiff was required to demonstrate the existence of a mental impairment that precluded her from performing substantial gainful activity for a continuous period of twelve months prior to the expiration of her insured status); *Oldenburgh v. Astrue*, 2009 WL 812010 at *1 (M.D.Pa. 2009) (plaintiff must establish that he was disabled before date last insured). "[A] medical condition which begins during a claimant's insured period, but does not become disabling until after its expiration, may not be the basis for qualification for disability benefits under the Act." *Capoferri v. Harris*, 501 F. Supp. 32, 36 (E.D.Pa. 1980), *aff'd*, 649 F.2d 858 (3rd Cir. 1981) (Table case); *see also Beety-Monticello v. Comm'r of Soc. Sec.*, 2008 WL 5130477 at *5 (D.N.J. 2008) ("Evidence that an impairment became disabling after the expiration of the individual's insured status does not entitle the individual to disability insurance benefits, even though the impairment may have existed before the individual's insured status expired."). I now turn to an examination of the ALJ's treatment of the evidence.

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Stevens, Plaintiff's treating physician, who opined that he was disabled from November 4, 2005 until November 3, 2006 due to alcoholic hepatitis and depression (AR 109-110). A treating physician's opinion is given controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *See* 20 C.F.R. § 404.1527(d)(2). Although the treating physician's conclusion should be accorded great weight, it may be rejected if it is unsupported by sufficient

clinical data, *Newhouse v. Heckler*, 753 F.2d 283, 286 (3rd Cir. 1985), or contradicted by other medical evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reasons for doing so. *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."). In rejecting Dr. Stevens' opinion, I find that the ALJ complied with the above standards relative to the Plaintiff's physical impairment.

In according Dr. Stevens' opinion little weight, the ALJ concluded that it was inconsistent with his own records (AR 20-21). When seen by Dr. Stevens for follow-up in December 2005, Plaintiff was doing well and reported no new problems (AR 259). Dr. Stevens found that his alcoholic hepatitis was resolving at that time (AR 259). The ALJ observed that on April 16, 2006, Dr. Stevens reported that Plaintiff had been doing well, had not had any alcohol since his last visit on December 7, 2005 and his alcoholic hepatitis had resolved (AR 21).

Moreover, I observe that Dr. Stevens' opinion was inconsistent with the VNA treatment records during the relevant time frame. While Plaintiff's physical symptoms were poorly controlled initially, partial to full recovery was expected, and by December 13, 2005 he was able to perform most activities of daily living, with only some assistance needed for preparation of light meals and carrying large loads of laundry (AR 201; 219).

Finally, Dr. Stevens' assessment was at odds with the state agency adjudicator's opinion, who engaged in a comprehensive review of the medical evidence and found that, as of his last date insured, Plaintiff was able to perform the physical demands of medium work notwithstanding his alleged significant restrictions in standing, walking, lifting and carrying (AR 276-279; 281).

The ALJ examined the medical records during the Plaintiff's hospitalization for substance abuse in November 2005 and determined that he had marked limitations in his activities of daily living and concentration, persistence and pace, moderate difficulties in social functioning and one episode of decompensation (AR 20). The ALJ found that while abusing alcohol, Plaintiff had poor energy level and motivation to help with his daily activities, stayed home and isolated himself, had "patchy" concentration and slow thought process and his immediate memory was

11

poor (AR 20). Following his hospitalization and while abstinent, the ALJ found that Plaintiff would have only mild limitations in his activities of daily living and social functioning, moderate limitations in his concentration, persistence or pace, and only one episode of decompensation (AR 21). He noted that any difficulties the Plaintiff testified to with respect to his activities of daily living were related to his physical impairment (AR 21). His finding that Plaintiff had only mild social limitations was based on Dr. Craig's opinion that any social withdrawal was largely due to years of alcohol abuse (AR 21). The ALJ recognized that his concentration and persistence would have been affected by his history of depression and anxiety, but noted that Plaintiff had worked in the past despite these symptoms (AR 21). The medical records showed only one episode of decompensation and there was no evidence of any treatment for depression/anxiety other than the medication that was prescribed in November 2005 (AR 21). The ALJ also relied on the report of Dr. Glover, the state agency reviewing psychologist, who concluded that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis (AR 25).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because he ignored the reports of Drs. Craig and Fernan which he claims supports his contention that his mental impairments were, in fact, disabling prior to December 31, 2005. *See* Plaintiff's Brief pp. 14-16. The Commissioner counters that no error occurred since these reports were generated after his date last insured and are irrelevant to the ALJ's disability determination. *See* Defendant's Brief pp. 15-16. The fact that the Plaintiff must have demonstrated that he was disabled on or before December 31, 2005 does not, however, conclusively answer the evidentiary question as to whether the ALJ erred in failing to consider medical evidence generated after the Plaintiff's date last insured.

Dr. Craig psychologically evaluated the Plaintiff on March 3, 2006, approximately two months following his date last insured. Given the report's proximity to the Plaintiff's date last insured, this evidence was sufficiently probative on the issue of whether the Plaintiff suffered a disability prior to the expiration of his insured status in the absence of alcohol abuse. *See e.g., Jackson v. Sec. of Health and Human Servs.*, 1986 WL 10907 at *2 (E.D.Pa. 1986) (rejecting argument that medical evidence of a disorder two months after insured status expired did not

prove disability during the period insured given the language in the report and its proximity to the termination of the claimant's insured status); *Begley v. Matthews,* 544 F.2d 1345, 1354 (6th Cir. 1976 ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time."), *cert. denied*, 430 U.S. 985 (1977); *Devoll v. Comm'r of Soc. Sec.* 234 F3d 1267, 2000 WL 1529803 at *4 (6th Cir. 2000) (unpublished decision) ("Medical evidence of a condition recognized after an insured period may establish the existence of the same condition during an earlier insured period if the temporal relation is reasonably proximate and supported by corroborative evidence arising during the insured period."); *Meek v. Astrue*, 2008 WL 4328227 at *2 (M.D.Fla. 2008) (ALJ should consider evidence discussing severity of an ongoing impairment if it is "reasonably proximate" to the date last insured).

Contrary to the Plaintiff's argument however, the ALJ did not ignore Dr. Craig's report and in fact, relied on a portion of his report in support of his conclusion that any limitations the Plaintiff suffered with respect to his social functioning was due to his years of alcohol abuse (AR 21; 25). Although the Plaintiff faults the ALJ for failing to discuss the GAF score of 45 assessed by Dr. Craig, a fair reading of his report reveals that the Plaintiff's mental condition improved while he was abstinent. Plaintiff reported that although he still felt anxious and had periodic depression, his medications were effective (AR 234). Dr. Craig found that he demonstrated good concentration, was motivated, was reasonably self-sufficient and had reasonably good social and test judgment since he stopped drinking (AR 233; 235). He concluded that the Plaintiff's mental impairments did not affect his ability to understand, remember and carry out instructions and that he had only moderate limitations in his ability to interact appropriately with the public, supervisors and coworkers and respond appropriately to work pressures and changes in a routine work setting (AR 238). Dr. Craig opined that any limitations in this area "would improve over time" (AR 238).

Dr. Fernan's opinions, however, of February 2, 2007 and September 14, 2007, were generated well after the Plaintiff's insured status expired (thirteen months and twenty months respectively), are temporally remote from the Plaintiff's date last insured and do not address the Plaintiff's level of functioning during the relevant time period. Given the content and

13

remoteness of these opinions, they have no relevance to the Plaintiff's condition prior to the expiration of his insured status. *See, e.g., Glanton v. Astrue,* 2009 WL 426614 at *2 (W.D.Pa. 2009) (disability opinions rendered over eight and twenty-five months after claimant's DIB coverage expired did not reflect claimant's condition before expiration of insured status); *Jones v. Barnhart,* 2005 WL 2033383 at *6 (E.D.Pa. 2005) (finding that evaluation which occurred six months after the date last insured was not probative evidence that the ALJ should have considered where it reflected only the plaintiff's current status and did not relate back to the period for which plaintiff was insured for benefits); *Abney v. Astrue*, 2008 WL 2074011 at *6-7 (E.D.Ky. 2008) ("Record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence relates back to the claimaint's limitations prior to the date last insured."); *Papp v. Comm'r of Soc. Sec.* 2006 WL 1000397 at *15 (S.D.N.Y. 2006) (medical reports prepared 12 months after the claimant's last insured date describing the claimant's symptoms as of those dates were irrelevant to the ALJ's analysis).

In summary, I find that the ALJ thoroughly discussed the Plaintiff's functional limitations while abusing alcohol and while abstinent and that his conclusion that his limitations while abstinent did not preclude him from working was supported by substantial evidence.

I now turn to the remaining arguments advanced by the Plaintiff. Plaintiff challenges the ALJ's findings at step four. The ALJ found that the Plaintiff retained the residual functional capacity to perform a full range of sedentary work and could meet the requirements of his past relevant work as a purchasing clerk and telemarketer (AR 25). The ALJ relied on the vocational expert's testimony that the Plaintiff's past employment was sedentary and semi-skilled in nature (AR 26). The ALJ compared the Plaintiff's RFC and the physical and mental demands of his past jobs and found that he was able to perform these jobs as "actually and generally performed" (AR 26). As a result, the ALJ concluded that Plaintiff was not disabled (AR 26). Plaintiff claims that Dr. Glover's findings of "moderate limitations" in a number of mental work-related areas, coupled with the ALJ's finding that he could perform less than a full range of sedentary work, required vocational expert testimony in order to "meet the Commissioner's burden." *See* Plaintiff's Brief pp. 17-18. I disagree.

The burden at this step does not rest with the Commissioner as Plaintiff contends; rather,

"[t]he burden of establishing that he or she cannot return to [his] past relevant work rests on the claimant." *Rivera v. Barnhart*, 239 F. Supp. 2d 413, 419 (D.Del. 2002). Moreover, the ALJ is not required to seek the testimony of a vocational expert at step four if there is other sufficient evidence to support the conclusion that the claimant is able to perform past relevant work. *Id.* at 420; *see also Coryea v. Comm'r of Soc. Sec.*, 2008 WL 4279809 at *11 (W.D.Pa. 2008) ("The ALJ is not required to seek the testimony of a VE at step four."); *Molina v. Barnhart*, 2004 WL 2250928 at *5 (E.D.Pa. 2004) ("[V]ocational expert testimony is not needed to establish that a claimant can return to her past relevant work.").

Here, Plaintiff contends that the ALJ found that he was only able to perform less than sedentary work. *See* Plaintiff's Brief p. 18. In point of fact, the ALJ concluded that the Plaintiff's ability to perform more than sedentary work was "more limited" than originally opined (AR 25). He thus limited him to sedentary work (AR 25). Since the Plaintiff's previous relevant work was sedentary, the ALJ was not required to consult a vocational expert in the absence of complex issues. *See* 20 C.F.R. § 404.1560(b)(2); *Lopez v. Comm'r of Soc. Sec.*, 270 Fed. Appx. 119, 123 (3rd Cir. 2008) (finding no error in failing to call a vocational expert at step four since no complex vocational issues were present).

### IV. CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD TECZA, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-242 Erie |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

AND NOW, this 10th day of June, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 12] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 14] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Edward Tecza, Jr.

The clerk is directed to mark the case closed.


s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.